UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH V. BRINGARD,

        Plaintiff,

                                            Case No. 1:07-cv-160

v.                                                Hon. Robert J. Jonker

PATRICIA CARUSO, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a  state prisoner pursuant to 42 U.S.C. §§ 1981, 1983 and 2000d.  This matter is before the court on defendants' motion for summary judgment (docket no. 9).

### I.      Background

        On March 7, 1986, plaintiff was convicted of two counts of manslaughter, one count of felonious driving and as a fourth habitual offender.  *See* Amended Judgment of Sentence (Jan. 4, 2000), attached to defendants' brief as exh. A.  Plaintiff was sentenced to one to two years imprisonment for the felonious driving conviction and 15 to 30 years imprisonment as a fourth habitual offender.  *Id.*

        Plaintiff's complaint is directed against Patricia Caruso, Director of the Michigan Department of Corrections ("MDOC") and the members of the Michigan Parole Board ("Parole Board").  Plaintiff alleges that he has been improperly denied parole since he was first eligible for parole in July 2000.  Plaintiff's six "claims" are set forth in ¶¶ 60-65 of his complaint.

First, plaintiff alleges that the Parole Board deferred their "statutory duty to make individual risk assessments in the parole eligibility consideration process to the subjective will of crime victims," which operated "to vitiate the impartiality" of the Board, violating plaintiff's rights under the Due Process Clause.  Compl. at ¶ 60.

Second, plaintiff alleges that the "practice or custom" of the Parole Board violates his rights under the Equal Protection Clause of the Fourteenth Amendment because it "operates to intentionally and irrationally treat affected offenders, including Plaintiff, disparately to similarly situated offenders whose victims do not oppose parole, and further operates to intentionally and irrationally treat affected offenders, including Plaintiff, disparately to crime victims, similarly situated where parole determinations are concerned, as equal protection principles demand." *Id.* at ¶ 61.

Third, plaintiff alleges that this "practice or custom" of the Parole Board violates his rights under the Ex Post Facto Clause, Art. I, § 10 of the United States Constitution, because it "resulted from changes to Michigan's substantive parole laws and standards occurring after Plaintiff's crimes were committed, and operated to significantly increase to [sic] measure of his punishment." *Id.* at ¶ 62.

Fourth, plaintiff alleges that the Parole Board's "application of the practice or custom of considering the racial balance of the prison population in making parole determinations . . . operates to intentionally and irrationally treat white offenders more harshly than their black counterparts on the basis of race -- an arbitrary or constitutionally impermissible consideration in the parole eligibility consideration process." *Id.* at ¶ 63.  Plaintiff alleges that these actions violate

2

his rights under the Equal Protection Clause of the Fourteenth Amendment and well as his rights under 42 U.S.C. §§ 1981 and 2000d.  *Id.*

Fifth, plaintiff alleges that the Parole Board's "practice or custom of utilizing knowingly false or inaccurate information to deny parole . . . likewise constitutes an arbitrary or constitutionally impermissible consideration in the parole eligibility consideration process" violates his substantive rights under the Due Process Clause of the Fourteenth Amendment.  *Id.* at ¶ 64.

Sixth, plaintiff alleges that "the combined cumulative changes in Michigan's substantive parole laws, standards and practices, applied in Plaintiff's case retroactively, have operated to increase Plaintiff's sentence by 8 years (and counting), and have effectively rendered Plaintiff ineligible for parole" in violation of the Ex Post Facto Clause.  *Id.* at ¶ 65.

Finally, plaintiff alleges that defendant MDOC Director Caruso condoned, acquiesced in or actively participated in the Parole Board's actions.  *Id.* at ¶¶ 60-65.

Plaintiff seeks declaratory and injunctive relief.  First, plaintiff seeks declaratory judgments: (1) that defendants' retroactive use of post-1992 substantive parole laws, standards, practices and customs violates the Ex Post Facto Clause of the Constitution; (2) that defendants' deferring of their statutory duty to make individual risk assessments in the parole eligibility consideration process to the subjective will of crime victims violates the Due Process and Equal Protection Clauses of the Constitution;  (3) that defendants' practice or custom of considering racial balance of the prison population in making parole release determinations violates the Equal Protection Clause of the Constitution and 42 U.S.C. §§ 1981 and 2000d; and, (4) that defendants' custom or practice of knowingly utilizing false information to deny offenders parole violates the Due Process Clause.

3

Second, plaintiff seeks the following injunctive relief: (1) to bar defendants from using the post-1992 substantive parole standards and the cumulative changes to the state's parole laws in plaintiff's case; (2) to bar defendants "from using, in any case, any of the arbitrary or constitutionally impermissible practices or customs described in the body of the complaint;" and (3) to order defendants "to conduct a new parole hearing in Plaintiff's case using the pre-1992 substantive parole standards and parole laws and practices in place at the time Plaintiff's crimes were committed, and without using the arbitrary or constitutionally impermissible considerations described in the body of the complaint."

## II.    Legal Standard

Defendants motion, which is brought under Fed. R. Civ. P. 12(b)(6) "or in the alternative" under Fed. R. Civ. P. 56, fails to identify which claims are subject to the motion to dismiss and which claims are subject to the motion for summary judgment.   Under these circumstances, the court will treat defendants' motions as seeking relief under Rule 56.   *See* Rule 12(b).   Summary judgment is appropriate under Rule 56(b) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

4

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.  Plaintiff's Fed. R. Civ. P.  56(f) affidavit

In his response,[1] plaintiff contends that defendants' motion is premature pursuant to Rule 56(f), which provides as follows:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

While Rule 56(f) allows a party to file a motion for additional time to respond to a motion for summary judgment, the rule "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious."  *Lewis v. ACB Business Services, Inc.*,  135 F.3d 389, 409 (6th Cir. 1998) (internal quotations omitted).  "The nonmoving party must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment."  *Id.*

Plaintiff has not moved for additional time to respond to defendants' motion for summary judgment.  Rather, he attached an affidavit to his response, which states that he needs additional information such as: declarations from former MDOC and Parole Board officials and the board's internal operating procedures to demonstrate a significant increase in the measure of punishment in support of the Ex Post Facto Clause claim; declarations and documents to

---

[1] The court has docketed two nearly identical responses to this motion.  *See* docket nos. 18 and 19. Because docket no. 19 includes a signed Rule 56(f) affidavit from plaintiff as exhibit 1 (as opposed to an unsigned affidavit in docket no. 18), the court will consider docket no. 19 as plaintiff's "response" to the motion.

demonstrate the increased weight given to crime victim's statements in the parole process; the production of the victims' statements in his case; sample cases of victims' statements in other cases; MDOC statistics on the parole rates by race of offender;  sample cases of assaultive offenders by race; and, exhibits that were not included in defendants' motions.[2]  *See* Bringard Affidavit attached to Response as exh. 1.

A continuance or rejection of defendants' motion for summary judgment is not warranted in this case.  Plaintiff has had an adequate opportunity to state his position in this suit, by filing an oversized 40-page response with 28 exhibits.  While plaintiff desires to engage in extensive discovery in this matter, he has not shown how postponement of a ruling on defendants' motion for summary judgment will enable his claims to survive the motion.  *See Lewis*, 135 F.3d at 409 (a party seeking relief under Rule 56(f) "has no absolute right to additional time for discovery.").  Furthermore, defendants' motions raise legal issues with respect to all of plaintiff's claims except for his substantive due process claim.[3]  Accordingly, the undersigned recommends that the court deny plaintiff's request for a continuance pursuant to Rule 56(f).

## IV.     Plaintiff's § 1983 claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim,

---

[2] This statement is contrary to defendants' certificate of service.  *See* docket no. 11.  Plaintiff did not contest the accuracy of the certificate of service nor file a motion to obtain the alleged missing exhibits prior to filing his 40-page response.  Under these circumstances, the court views plaintiff's claim regarding the alleged missing exhibits as waived.

[3] *See* discussion of the substantive due process claim in ¶ IV. F., *infra*.

a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

>    **A.    Due Process Clause challenge to using crime victim's statements in parole determinations.**

In his first claim, plaintiff alleges that the Parole Board's consideration of crime victim's statements violates the "Due Process Clause."  As an initial matter, plaintiff states that "no portion of Plaintiff's complaint can be construed as attempting to state a procedural due process claim, or asserting that  prisoners in Michigan . . . had an expectation of release on the court-imposed minimum sentence requiring minimal due process protections under the Due Process Clause."  Response at 6.  The court disagrees. While plaintiff desires to avoid discussing the issues of procedural due process and whether he has a constitutionally protected interest in parole, he contests the Parole Board's procedure of considering crime victims' statements and the weight given to those statements:

>    As it stands now, Plaintiff knows victim's statements have been submitted in his case, but has no idea what has been said in them.  He is therefore unable to refute the factualness or relevance thereof.  For all he knows, they contain inaccurate information.  Even if they do not, the impact an offender's crime had on the victim and the victim's family has already been [ ] considered in fashion [sic] the offender's sentence to begin with.  Therefore, absent exceptional circumstances, or verifiable allegations of post-sentencing misconduct by an offender towards his victim, they are irrelevant where an offender's potential re-offense risk is concerned.  As the sample cases and other evidence submitted in support of this claim indicate, criminal history and institutional conduct mean nothing to the current board.  To the contrary, its grant or denial of parole appear to be dependent on the victim's subjective sentiments.

Plaintiff's Response at 28.

The court rejected nearly identical arguments in *Palmer v. Granholm*, No. 1:06-cv-301, 2006 WL 1876973 (W.D. Mich. July 5, 2006), *aff'd*, No. 06-2072 (6th Cir. Jan. 29, 2007). Because the *Palmer* opinion is directly on point, the court will quote it at length:

> Plaintiff argues that the parole board's unwritten policy of deferring its decision-making to the crime victim and the parole board's consideration of false "confidential" victim statements under the Crime Victim's Rights Act violate his procedural due process rights. Plaintiff fails to raise a claim of constitutional magnitude. Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.*; *Bd. of Pardons v. Allen*, 482 U . S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir.1991).
>
> In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir.1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at * 1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at * 1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v.. Mich. Parole Bd.*, 596

> N.W.2d 598, 603-04 (Mich.1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65.

*Palmer*, 2006 WL 1876973 at *3-4. Furthermore, even if plaintiff raised a substantive due process claim, this too would fail. *See* discussion in ¶ IV. F., *infra*.

Plaintiff has no basis to raise a procedural due process claim with respect to the Parole Board's use of the crime victims' statements. Accordingly, defendants are entitled to summary judgment on this claim.

### B. Equal Protection Clause challenge to using crime victim's statements in parole determinations.

In his second claim, plaintiff alleges that the Parole Board's "illicit practical implementation" of Michigan law violates his constitutional rights under the Equal Protection Clause, because the Parole Board (1) treats him differently from similarly situated offenders whose victims do not oppose parole, and (2) "operates to intentionally and irrationally treat affected offenders, including Plaintiff, disparately to crime victims, similarly situated where parole determinations are concerned." Compl. at ¶¶ 35-42, 61. Plaintiff further alleges that the Parole Board "acts with blatant partiality toward the subjective will of crime victims." *Id.* at 42.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. . . The general rule gives way, however, when a statute classifies by race, alienage, or national origin." *Id.* at 440. In order to maintain a Fourteenth Amendment Equal

Protection claim, plaintiff must prove that he is a member in a protected class and that a state actor purposefully discriminated against him because of his class membership. *See Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000).

While plaintiff frames his claim as brought under the Equal Protection Clause, he does not allege that a particular statute violates that clause.  Rather, he raises a due process claim, complaining that he does not have access to the statements and that the Parole Board accepts the statements "as truth without verification."   Compl. at ¶¶ 35-42, 61. As the court previously discussed, plaintiff has no basis to raise a procedural due process claim with respect to the Parole Board's use of the crime victims' statements.  Defendants are entitled to summary judgment on this claim.

**C.      Violation of the Ex Post Facto Clause in applying substantive law enacted after plaintiff's sentencing.**

**D.      Retroactively applying "cumulative changes in Michigan's substantive parole laws, standards and practices . . . to increase Plaintiff's sentence" and  effectively render him "ineligible for parole" in violation of the Ex Post Facto Clause.**

Next, the court will address plaintiff's Ex Post Facto challenges raised in his third and sixth claims.  Plaintiff committed his crimes on July 10, 1985, and was convicted on March 7, 1986.  Plaintiff contends that his parole was denied based upon three later enacted statutes: M.C.L. § 791.231a ; the Crime Victim's Rights Act ("CVRA"), M.C.L. § 780.751 *et seq.*; and, the parole

guidelines established  pursuant to M.C.L. § 791.233e.  *See* Compl. at ¶¶ 19-33.[4]

> **1.**    **1992 statute authorizing the governor to appoint the Parole Board**

Plaintiff is not the first prisoner to raise an Ex Post Facto challenge to the 1992 statute that transformed the Parole Board from a "civil service" entity to an entity under the direct control of the governor.  In *Shultz v. Rubitschun*, No. 1:05-cv-697, 2005 WL 3262435 at *5 (W.D.Mich. Nov. 30, 2005), this court rejected the claim as follows:

> The Constitution's Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collings v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). In *California Dep't of Corr. v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the Ex Post Facto Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A "sufficient risk of increased punishment" involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n. 3.
>
> *        *        *
>
> Plaintiff next contends that the 1992 change in the parole board from a "civil service" entity to one under the direct control of Michigan's executive department has created a board that is no longer neutral and unbiased. Under Michigan law

---

[4] The court is aware of the recent decision issued in *Kenneth Foster Bey v. John S. Rubitschun*, No. 05-71318 (E.D. Mich. Oct. 23, 2007).  The *Kenneth Foster Bey* opinion addressed the position of a class of inmates defined as "[a]ll parolable lifers in the custody of the Michigan Department of Corrections who committed crimes (for which they received a parolable life sentence) before October 1, 1992, and whose parole the 'new' parole board has denied, passed over, expressed no interest in pursuing, or otherwise rejected or deferred."  In her opinion, Judge Battani concluded that "[t]he change in the make-up of the Michigan Parole Board, the Board's understanding of why the change occurred and how it was to exercise its discretion, its redefining of the eligibility procedure for nonmandatory lifers, and changes to the timing and intervals of the interview and review process, when considered in total have significantly disadvantaged the class and constitute a violation of the Ex Post Facto Clause."  *Kenneth Foster Bey*, No. 05-71318, slip op. 42. Defendant is not a member of this unique class, and this case is not applicable to him.

11

enacted in 1992, the MDOC Director appoints a ten member parole board. The members receive an annual salary set by the state legislature, but are no longer within the State's civil service provisions. Mich. Comp. Laws Mich. Comp. Laws § 791.231a(1). The Director may remove parole board members for incompetency, dereliction of duty, malfeasance, misfeasance or nonfeasance in office. Mich. Comp. Laws § 791.231a(3). Plaintiff argues that the Director has appointed parole board members who are pro-law enforcement and, therefore, less inclined than their predecessors to grant parole to prisoners; and further, without civil service protection, members are subject to undue political influence.

Neutrality on the part of a parole board does not require civil service protection, or employment by a different agency, a law degree, or election or appointment as a judicial officer. *Morrissey v. Brewer*, 408 U.S. 471, 486, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Crowley v. Renico*, 81 F. App'x 36, 37 (6th Cir.2003) (finding a claim that the Michigan Parole Board does not constitute a neutral and detached hearing body, based upon essentially the same arguments presented in the present case, to be without merit). Even civil service employees may be fired for reasons such as unsatisfactory service, failing to carry out their duties and obligations, or conduct unbecoming a state employee. *Young v. Trombley*, No. 00-cv-10488-BC, 2002 WL 1461755, *2 (E.D.Mich. July 5, 2002). "[T]he fact that Parole Board members are no longer civil service employees does not give the Director greater discretion in firing them and does not make them more amenable to political influence." *Id.* "The bias alleged by the [Plaintiff]-the 'general tendency of an administrative agency to serve the executive under which it derives its authority,' ' and the " 'general bias in favor of the alleged state interest or policy' '-does not render the agency unable to make an objective analysis. *Id.* (*quoting Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir.1989)). Thus, although current parole board members are guided by an underlying philosophy that is different than the philosophy of former board members, this does not constitute the application of a newly enacted law or formal policy in a manner that would violate the Ex Post Facto Clause.

*Shultz*, 2005 WL 3262435 at *4-5.

For the reasons as stated in *Shultz*, the plaintiff's Ex Post Facto Clause claim with respect to M.C.L. § 791.231a and the reorganization of the Parole Board should be dismissed.

## 2.     Ex Post Facto challenge to the CVRA

The pertinent portion of the CVRA (as most recently amended) reads as follows:

(1) A victim has the right to address or submit a written statement for consideration by a parole board member or a member of any other panel having authority over the prisoner's release on parole.

(2) Not less than 30 days before a review of the prisoner's release, a victim who has requested notice under section 19(1)(f) [FN1] shall be given written notice by the department of corrections informing the victim of the pending review and of victims' rights under this section. The victim, at his or her own expense, may be represented by counsel at the review.

(3) A victim shall receive notice of the decision of the board or panel and, if applicable, notice of the date of the prisoner's release on parole. Notice shall be mailed within a reasonable time after the board or panel reaches its decision but not later than 14 days after the board or panel has reached its decision. The notice shall include a statement of the victim's right to appeal a parole decision, as allowed under section 34 of the corrections code of 1953, 1953 PA 232, MCL 791.234.

(4) A record of an oral statement or a written statement made under subsection (1) is exempt from disclosure under the freedom of information act, 1976 PA 442, MCL 15.231 to 15.246.

[FN1] M.C.L.A. § 780.769.

M.C.L. § 780.771.

Defendants state that "it is not entirely clear the Crime Victim's Rights Act, with its provision that victims may address the parole board, was passed after Plaintiff committed his crime." Defendants' Brief at 9. In fact, the statute provides that "[t]his article [i.e., the CVRA] shall apply only to crimes committed on or after October 9, 1985." M.C.L. § 780.775(2). Plaintiff committed his crime prior to this date. Accordingly, the CVRA did not apply to plaintiff's crimes.

The question before the court is whether the Parole Board can consider a victim's statement submitted pursuant to the CVRA (i.e., M.C.L. § 780.771(1)) in determining plaintiff's parole. Defendants contend that the enactment of the CVRA did nothing more than "codify a crime victim's right to address the parole board and require the victim to be notified in advance that the perpetrator of the crime against them was being considered for parole." Defendants' Brief at 10.

13

Defendants point to the Parole Board's inherent right to consider the comments of a crime victim as found in M.C.L. § 791.233(1)(a)[5], which provides in pertinent part:

(1) The grant of a parole is subject to all of the following:

(a) A prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety.

Before the passage of the CVRA, the 1985 version of the Michigan Administrative Code ("MAC") § 791.7715(1), required the Parole Board to evaluate 14 factors "in determining whether parole is in the best interests of society and public safety":

(a)     Potential for violence, as demonstrated by prior behavior or other objective criteria.

(b)     Willingness to accept responsibility for prior behavior.

(c)     Patterns or other information indicating a likelihood that the resident is a professional or career criminal.

(d)     Pending prosecutions.

(e)     Behavior under prior correctional supervision.

(f)     Employment history.

(g)     Job readiness.

(h)     Resident's recognition of critical personal problem areas and progress in dealing with them.

(i)     Family or community ties.

(j)     Performance at work or school assignments.

---

[5]This statute remains unchanged from the date that plaintiff committed his crimes.

14

(k)     Need for further institutional program involvement to improve release readiness.

(l)     Mental stability.

(m)     Irreversible medical condition which reduces likelihood of further criminal acts.

(n)     A suitable and realistic parole plan.

MAC § 791.7715(1) (1985 Annual Supplement).  The MAC also exempted the disclosure of "written material used in making the board's determination" that was "obtained on a promise or confidentiality," "privileged by law" or "unduly hazardous to persons."  *Id.* at § 791.7701(2)(b).

The present version of MAC § 791.7715(1) specifically references the crime victim's statements as provided under the CVRA, stating that "a prisoner shall not be released on parole until the parole board has considered all relevant facts and circumstances, including the probability of parole as determined by the parole guidelines . . . and any crime victim's statement provided under [the CVRA]" ).  In addition, under the present version of this regulation, the Parole Board may consider a number of additional factors similar to those listed in the 1985 version:

(2) The parole board may consider all of the following factors in determining whether parole is in the best interests of society and public safety:

(a) The prisoner's criminal behavior, including all of the following:

(i) The nature and seriousness of the offenses for which the prisoner is currently serving.

(ii) The number and frequency of prior criminal convictions.

(iii) Pending criminal charges.

(iv) Potential for committing further assaultive or property crimes.

(v) Age as it is significant to the likelihood of further criminal behavior.

(b) Institutional adjustment, as reflected by the following:

 (i) Performance at work or on school assignments.

 (ii) Findings of guilt on major misconduct charges and periods of confinement in administrative segregation.

 (iii) Completion of recommended programs.

 (iv) Relationships with staff and other prisoners.

 (v) Forfeitures or restorations of good time or disciplinary credits.

(c) Readiness for release as shown by the following:

 (i) Acquisition of a vocational skill or educational degree that will assist in obtaining employment in the community.

 (ii) Job performance in the institution or on work-pass.

 (iii) Development of a suitable and realistic parole plan.

(d) The prisoner's personal history and growth, including the following:

 (i) Demonstrated willingness to accept responsibility for past behavior.

 (ii) Employment history before incarceration.

 (iii) Family or community ties.

(e) The prisoner's physical and mental health, specifically any hospitalizations or treatment for mental illness and any irreversible physical or mental condition which would reduce the likelihood that he or she would be able to commit further criminal acts.

(3) The parole board may consider the prisoner's marital history and prior arrests that did not result in conviction or adjudication of delinquency, but shall not base a denial of parole solely on either of these factors.

(4) The parole board shall not consider any of the following in making a parole release decision:

(a) A juvenile record that a court has ordered the department to expunge.

16

(b) Information that is determined by the parole board to be inaccurate or irrelevant after a challenge and presentation of relevant evidence by a prisoner who has received a notice of intent to conduct an interview as provided in R. 791.7701. This subrule applies only to presentence investigation reports prepared before April 1, 1983.

MAC § 791.7715.

There is no question that the CVRA added a new mandatory consideration for the Parole Board. In determining whether a change in the law regulating parole violates the Ex Post Facto Clause, the controlling inquiry is whether the retroactive application of the law creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 509. "The *Morales* test requires a showing of sufficient risk of punishment, not merely some ambiguous sort of disadvantage suffered by an inmate." *Shabazz v. Gabry*, 123 F.3d 909, 914 (6th Cir. 1997) (internal quotations omitted). The court agrees with defendants that the CVRA created an explicit mechanism to require the Parole Board to consider facts and circumstances that it had the statutory authority to consider. In the court's view, this is the type of "minor . . . mechanical change[] that might produce some remote risk of impact on a prisoner's expected term of confinement," which the Supreme Court found as not violative of the Ex Post Facto Clause. *See Morales*, 514 U.S. at 508.

### 3.    Parole Guidelines

Plaintiff contends that the statute creating the parole guideline system enacted in 1992, i.e., M.C.L. § 791.233e, violated the Ex Post Facto Clause. Compl. at ¶¶ 28-29. This statute provides in pertinent part that:

The department shall develop parole guidelines . . . that shall govern the exercise of the parole board's discretion . . . as to the release of prisoners on parole under this act. The purpose of the parole guidelines shall be to assist the parole board in making release decisions that enhance the public safety.

17

M.C.L. § 791.233e(1).

The court agrees with defendant that the use of the guidelines, i.e., "to <u>assist</u> the parole board in making release decisions," demonstrates that the parole guidelines are not determinative of a parole decision, but only one factor to be considered. *See* MAC § 791.7715(1) (emphasis added). Furthermore, the Parole Board "may depart from a parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. M.C.L. § 791.233e(6). As defendants point out, while the parole guidelines could have a negative impact on a prisoner by indicating a low probability of parole, the guidelines could have no effect (indicating an average probability of parole), or a positive effect (indicating a high probability of parole). Because of the wide variety of results possible under the parole guidelines, and the non-determinative nature of the guidelines, the court concludes that the statute creating the guidelines did not create a sufficient risk of increasing punishment. *Morales*, 514 U.S. at 509. *See Partridge v. Davis*, 2007 WL 2852340 at *10 (E.D.Mich. Sept. 30, 2007) ("[t]he Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion"). Accordingly, the court concludes that the parole guideline statute does not violate the Ex Post Facto Clause.

### E.     Consideration of the offender's race under the Equal Protection Clause of the Fourteenth Amendment.

In his fourth claim, plaintiff alleges that Parole Board discriminates against white inmates in making parole decisions, because it engages in a form a racial balancing to deny white prisoners parole. However plaintiff, a white male, has not demonstrated that he is a member of a

protected class for purposes of the Equal Protection Clause. *See Herron,* 203 F.3d Ct. 417. This claim should be dismissed.

> **F.    The Parole Board utilizes "knowingly false or inaccurate information to deny parole" in violation of plaintiff's substantive due process rights.**

Finally, in his fifth claim, plaintiff contends that the Parole Board "frequently" uses false or inaccurate information to deny parole "in an attempt to provide an appearance of justification where none exists in reality." Compl. at ¶ 48. For example, plaintiff contends that the Parole Board "repeatedly cite as purported reason for the perpetually [sic] denial of parole in Plaintiff's case the false and inaccurate contention that his current crimes were committed while he was under state supervision, and unreasonably refuse to expunge this false or inaccurate information from his file and refrain from utilizing it as purported [sic] reason to perpetually deny him parole, per his request that they do so." *Id.* at ¶ 49.

This court rejected a similar substantive due process claim involving the use of false information in *Palmer*. Once again, the court will quote extensively from that opinion:

> Plaintiff also argues that the parole board's unwritten policy of deferring its decision-making to the crime victim and the parole board's consideration of false "confidential" victim statements violate his substantive due process rights. . . .
>
> To the extent that Plaintiff presents a federal constitutional claim, his claim is without merit. Substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest. *See Block v. Potter*, 631 F.2d 233, 236 n. 2 (3d Cir.1980); *see also Mayrides v. Chaudhry*, No. 01-3369, 2002 WL 1359366, at *2 (6th Cir. June 20, 2002) (considering substantive due process claim in context of parole). In order to demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Plaintiff must show that the Michigan Parole Board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir.1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n. 4 (6th Cir.1995). Clearly, in this case, it cannot be said that the actions of the Michigan Parole Board in denying Plaintiff's release on parole seven times either shock the

conscience or constitute an "egregious abuse of governmental power." *Id.* Plaintiff's sentence was imposed for breaking and entering, felonious assault and two counts malicious destruction of property over $100.00. In support of its decision, the parole board noted that Plaintiff's crime involved injury to the victim(s) and the presence of a weapon, and he has a history of probation failure and substance abuse. *See* Ex. 3 to Pl.'s Compl. The parole board cannot reasonably be considered to have committed an egregious abuse of governmental power in concluding that Plaintiff continues to represent a safety risk to society if released. Consequently, Plaintiff has failed to assert a constitutional claim cognizable in a federal habeas proceeding.

*Palmer*, 2006 WL 1876973 at *5.

Plaintiff states that he was denied parole three times: in July 2000; in September 2001; and, in October 2005. Compl. at ¶ 14. The parole eligibility report dated August 2, 2005, indicated that plaintiff's active crime (2 counts of manslaughter) caused the death of two 8-year-old triplets, when he struck the victims' vehicle while he had an estimated blood alcohol content of 2.2%. Parole Eligibility Report (Aug. 2, 2005) attached to defendants' brief as exh. A. The report showed a prior criminal record of three felony convictions and seven misdemeanor convictions, with his prior crimes involving property, drugs/alcohol and weapons. *Id.* Moreover, plaintiff had 18 major misconducts during his active sentence, with two major misconducts since his last Parole Eligibility Report was prepared. *Id.*

The Parole Board gave the following reasons for denying plaintiff parole on October 17, 2005:

> **Crime& Criminal Behavior**
> **The assaultive crime:**
> Involved minor/child victim
> Was substance abuse related
> Victimized a stranger
> Had multiple victims
> Resulted in loss of life
>
> **The prisoner has a criminal history:**
> Includes drug/alcohol related crimes

20

Including a weapon or weapons

**Correctional Adjustment**
**The behavior reflected in the misconducts:**
Shows that prisoner has received misconduct(s) since coming to MDOC or since last PBI

**The prisoner's prior pose conviction corrections history includes:**
Commission of crime while under supervision

**Program Involvement**
**Through involvement in community programs, the prisoner has:**
Been denied community placement due to a special designation

**Personal History**
**The prisoner has a history of substance abuse which:**
Is related to criminal behavior
Is of long standing duration

**Recommendations For Corrective Actions Which May Facilitate Release:**
Enter into or continually involve yourself in substance abuse programming

Obtain screening by psychological staff to determine the appropriateness of group therapy to reduce the risk to society

Provide additional demonstration of positive prison behavior during the period of the continuance

*Id.*

Based on this record, the Parole Board's decision to deny plaintiff parole three times and place him back in society can hardly be said to "shock the conscience." *See Hampton*, 106 F.3d at 1288. Furthermore, even if the Parole Board relied on inaccurate information "thereby treating him unfairly during the parole process," plaintiff's § 1983 claim fails because he "has no constitutionally-protected liberty interest in the granting of parole or the following of parole procedures." *Caldwell v. McNutt*, 158 Fed.Appx. 739 (6th Cir. 2006), *citing Sweeton*, 27 F.3d at 1165. Accordingly, defendants are entitled to summary judgment on this claim.

## V.      Consideration of the offender's race under 42 U.S.C. § 1981.

Next, plaintiff alleges a violation of § 1981, which provides in pertinent part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Under appropriate circumstances (not present in this case), plaintiff could state a cause of action for reverse discrimination under § 1981, which considers "all persons" protected by the statute to include white persons. *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 287 (1976). *See, e.g., Lentz v. City of Cleveland*, 410 F. Supp. 2d 673 (N.D. Ohio 2006) (allowing reverse discrimination claim by white police officer). However, such circumstances do not exist in this case. Because plaintiff has no constitutionally protectable interest in parole, *see Greenholtz*, 442 U.S. at 7, he has nothing to protect under § 1981. *See Thompson v. Galetka*, 42 Fed. Appx. 397, 399 (10th Cir. 2002) (noting "that § 1981 applies to commercial and employment contracts, not to whether an inmate receives parole"); *Williams v. Briscoe*, 641 F.2d 274 (5th Cir. 1981) (prisoner denied parole could not maintain an action under § 1981 because the applicable state law did not create a constitutionally protectable expectancy of release). Defendants' motions should be granted with respect to the § 1981 claim.

## VI.      Consideration of the offender's race under 42 U.S.C. § 2000d.

Finally, plaintiff alleges that defendants have violated his rights under § 2000d, which provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

22

"It is axiomatic that in order to recover under this provision against a defendant, it must be proved that the defendant is a recipient of Federal financial assistance." *Texas Peace Officers Association v. City of Galveston, Texas*, 944 F. Supp. 562, 565 (S. D. Tex. 1996). Here, plaintiff has not alleged, let alone demonstrated, that he has been denied the benefits from a program or activity "receiving Federal financial assistance."   Accordingly, plaintiff's § 2000d claim should be dismissed.

## VII.   RECOMMENDATION

I respectfully recommend that plaintiff's request for a continuance pursuant to Rule 56(f) (docket no. 19) be **DENIED** and that defendants' motion to dismiss and for summary judgment (docket no. 9) be **GRANTED**.


Dated:  January 8, 2008                                    /s/ Hugh W. Brenneman, Jr.
                                                           HUGH W. BRENNEMAN, JR.
                                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).